USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JESSICA SAUNDERS and ROSA SAUNDERS,

Plaintiffs,

- against -

THE SALVATION ARMY and CAROL A. BRYANT,

Defendants.

---------------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

**06 Civ. 2980 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

Plaintiffs claim they were discriminated against, in violation of the Fair Housing Act[1] ("FHA") and the New York City Human Rights Law ("NYCHRL"), when defendants denied them the opportunity to rent an apartment at the Parkside Evangeline Residence[2] ("Parkside") because of Jessica Saunders' disability.[3] On January 5, 2007, the parties reached a settlement, which was put on the record. The settlement agreement permitted plaintiffs to separately move for attorney's fees and costs, to be set by the Court. Plaintiffs now request attorney's

---

1 42 U.S.C. § 3601 *et seq.*

2 Located at 18 Gramercy Park, New York, New York. Parkside is owned and operated by the Salvation Army, a not-for-profit corporation. *See* Complaint ¶ 8. Carol A. Bryant is the Administrator at Parkside. *See id.* ¶ 9.

3 Jessica Saunders suffers from a severe form of rheumatoid arthritis which requires her to use a wheelchair most of the time. *See id.* ¶ 10.

fees in the amount of $53,467.50 and $1,390.75 in costs.[4] Defendants oppose this motion on the ground that plaintiffs' request for attorney's fees is unreasonable.[5] For the following reasons, plaintiffs are awarded fees and costs albeit in a reduced amount.

## I. LEGAL STANDARD

### A. Attorney's Fees and Costs

The FHA provides that a "prevailing party" may be awarded reasonable attorney's fees and costs.[6] In general, "a 'prevailing party' is one who

---

[4] *See* Plaintiff's Memorandum in Support of Motion to Tax Attorneys' Fees and Costs ("Pl. Mem."); Declaration of Richard F. Bellman ("Bellman Decl."); and Declaration of Craig Gurian ("Gurian Decl.").

[5] *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Attorney's Fees ("Def. Mem.") at 2. *See also* Affirmation of Joseph Goubeaud, Jr. in Opposition ("Goubeaud Aff.) at ¶ 6 ("The award for attorney[']s fees requested by the Plaintiffs is exorbitant and unreasonable in time and amount, with excessive time spent on drafting, reviewing, internal conferences and duplicative and unnecessary."); ¶ 11 ("The hourly rate requested by the Plaintiffs is similarly unreasonable. The Plaintiffs have proffered no evidence in support of their request for four hundred fifty dollars ($450.00) per hour for Mr. Bellman and four hundred dollars ($400.00) per hour for Mr. Gurian.").

[6] *See* 42 U.S.C. § 3613(c)(2) ("In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."). The NYCHRL also provides that a prevailing party may be awarded reasonable attorney's fees and costs. *See* New York City Administrative Code § 8-502(f).

has been awarded some relief by the court."[7]

> Once it has been determined that an award of fees and costs is appropriate, the next step is to determine the amount of the award. The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.[8]

The number of hours reasonably expended on the litigation multiplied by the reasonable hourly rates for the attorneys who worked on the case is the so-called "lodestar" figure.[9] Once the lodestar is established, there is a strong presumption that it represents a reasonable fee.[10] Furthermore, the Second Circuit has

---

[7] *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001).

[8] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quotation marks and citation omitted).

[9] *See I.B. v. New York City Dep't of Fin.*, 336 F.3d 79, 80 (2d Cir. 2003).

[10] *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997).

consistently rejected a strict proportionality requirement in civil rights cases.[11]

Whether an adjustment to the lodestar figure is appropriate, however, is a matter left to the discretion of the district courts.[12] District courts have the discretion to "independently review and assess the reasonableness of the claimed rates as well as hours worked."[13] With regard to hourly rates charged, "the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[14] Courts should reduce the lodestar amount by any amount deemed unreasonable, unnecessary or unrecoverable.[15]

---

[11] *See Lunday v. City of Albany*, 42 F.3d 131, 134-35 (2d Cir. 1994). For a discussion of proportionality, *see generally Cowan v. Prudential Ins. of Am.*, 935 F.2d 522, 525-28 (2d Cir. 1991).

[12] *See Hensley*, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award."); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("The district court may adjust the lodestar figure - upward or downward - based on a variety of factors.").

[13] *Gatti v. Community Action Agency of Greene County, Inc.*, 263 F. Supp. 2d 496, 518 (N.D.N.Y. 2003), *aff'd*, 2004 WL 234877, at *2 (2d Cir. Feb. 9, 2004) (unpublished).

[14] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). *Accord Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998).

[15] *See Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) ("In determining the number of hours reasonably expended for purposes of calculating

## II. DISCUSSION

Richard Bellman, one of plaintiffs' attorneys at the Anti-Discrimination Center of Metro New York, Inc. (the "Center"), sent opposing counsel a letter dated October 2, 2006, which states:

> The plaintiffs would accept a settlement in which they would receive $50,000 in compensatory relief and $20,000 in fees and costs for [a] total financial package of $70,000. A "non-admission of liability" provision remains acceptable, and the absence of any confidentiality agreement remains essential.[16]

According to defendants' attorney, Joseph Goubeaud, Jr., "[a]ny potential settlement was thwarted by Mr. Bellman's insistence that his firm would never agree to keep the terms of the settlement confidential."[17] According to Bellman, the proposed $70,000 package was unacceptable to defendants, for reasons separate and apart from defendants' alleged insistence on full confidentiality.[18]

---

the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims.") (citing *Hensley*, 461 U.S. at 434).

[16] 10/2/06 Letter from Bellman to Joseph G. Goubeaud, defendants' attorney, Ex. D to the Goubeaud Aff.

[17] Goubeaud Aff. ¶ 7(iv).

[18] *See* Reply Declaration of Richard F. Bellman in Support of Plaintiffs' Motion to Tax Fees and Costs ("Reply Decl.") ¶ c ("Mr. Goubeaud told me that, independent of his clients' insistence on full confidentiality, *the $70,000 demand was unacceptable to defendants*.") (emphasis in original).

Thus, two very different scenarios existed as of October 2, 2006: (1) plaintiffs made a good faith demand in an honest attempt to settle the case, which defendants unreasonably rejected; or (2) the letter was a ruse and it was Bellman's insistence upon disclosing the terms of the settlement that was the real obstacle in resolving the matter. The date of Bellman's letter is important because as of October 2, 2006, Bellman had spent only 43.20 hours litigating the case while his co-counsel, Craig Gurian, had spent only 5.25 hours. Thus, the Court is faced with the choice of either: (1) compensating plaintiffs' counsel for all their work following the settlement discussions, or (2) limiting their fee to the amount incurred as of the settlement conference on the theory that plaintiffs' counsel failed to negotiate in good faith.[19]

Because I cannot conclude that plaintiffs' counsel acted in bad faith, plaintiffs are entitled to a fee award covering all of counsel's work. Plaintiffs have requested $53,467.50 in attorney's fees, which amounts to 104.15 hours of Bellman's time at $450 per hour and 16.25 hours of Gurian's time at $400 per hour. In addition to finding some of the work performed by Bellman to be

---

[19] Goubeaud suggested that this Court award plaintiffs $20,000.00 in attorney's fees. *See* Goubeaud Aff. ¶ 17 ("At the settlement conference conducted on October 16, 2006, the court suggested attorney[']s fees in the neighborhood of $20,000.00, which was what Mr. Bellman requested. It is respectfully submitted that the attorney[']s fees to be paid to the Plaintiff[s] should be in this amount.").

duplicative and unnecessary, this Court also finds the rates charged by Bellman and Gurian to be excessive. Notwithstanding plaintiffs' citation to *Elliot v. City of New York*, 99 Civ. 9308 (MBM)[20] and *Daniels v. City of New York*, 99 Civ. 1695 (SAS) (HBP),[21] and contrary to the finding of then-district court Judge Reena Raggi in *Southside v. 454-56 Bedford Avenue*, 94-CV-2086 (RR),[22] I do not accept the rates requested by plaintiffs. Instead, I will award attorney's fees using a rate of $300 per hour for both Bellman and Gurian.[23]

Support for this rate is found in *Tlacoapa v. Carregal*[24] and this Court's conclusion that the Center is comparable to a small for-profit law firm. While the Supreme Court prohibited making a distinction between for-profit and

---

[20] *See* Ex. 1 to Pl. Mem. at 6 ("Mr. Meyerson has not been able to point to a particular case in which he was awarded fees at the rate he seeks, $450 per hour. However, I believe his time is properly billed at $425 per hour . . . .").

[21] *See* Ex. 2 to Pl. Mem. at 38 (where Magistrate Judge Henry B. Pitman reduced the rates of civil rights attorneys William Goodman and Jonathan C. Moore, who have thirty-nine and twenty-seven years experience respectively, to $400 per hour).

[22] *See* Ex. 2 to Bellman Decl. at 8 (awarding attorney's fees at the rate of $350 per hour despite the view that such rate was high and that a more reasonable rate would have been $300 per hour).

[23] Bellman has forty-three years of legal experience, *see* Bellman Decl. ¶ 11, while Gurian has twenty-two years, *see* Gurian Decl. ¶ 5. As a result, both attorneys will be paid the same hourly rate.

[24] 386 F. Supp. 2d 362 (S.D.N.Y. 2005).

not-for-profit entities in determining the prevailing market rates in the relevant community,[25] it said nothing about considering the size of the law firm in calculating fees. And it was size that was the determinative factor considered by Judge Stephen C. Robinson in *Tlacoapa*.

In *Tlacoapa*, plaintiff requested fees at rates of $375 and $300 per hour for two of his attorneys who had twenty years and three years experience, respectively.[26] Judge Robinson found these rates to be unreasonably high, noting that

> [a]lthough courts in this district have awarded attorney[']s fees based on rates as high as those requested by the Plaintiff, such rates are usually reserved for attorneys in larger law firms. Courts have recognized that the size of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable attorney's fee, largely because of overhead costs. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan* , 885 F.2d 1053, 1058-59 (2d Cir. 1989) (noting that the size of an attorney's firm is relevant in determining the relevant community's "prevailing market rates" and that "smaller firms may be subject to their own prevailing market rate"), cert. denied, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990); *Algie v. RCA Global Communications, Inc.*,

---

[25] *See Blum*, 465 U.S. at 895 ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.").

[26] *See Tlacoapa*, 386 F. Supp. 2d at 369.

> 891 F.Supp. 875, 895 (S.D.N.Y. 1994) ("If the movant is represented by a small or medium-size firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead."), aff'd, 60 F.3d 956 (2d Cir. 1995).[27]

Accordingly, the court calculated attorney's fees using $250 and $200 per hour as the applicable rates.[28]

Here, the Center is comparable to a small law firm - it has employed one or two attorneys at most since its inception in 2003. Moreover, the Center does not pay rent for its office space which is donated by a law firm.[29] Thus, the Center does not incur the same overhead costs that burden a large law firm. Consequently, the rates charged by its attorneys cannot approximate those charged by attorneys in large New York City law firms. Accordingly, the $450 per hour and $400 per hour rates requested by plaintiffs are simply too high for the Center

---

[27] *Id.* at 369-70.

[28] *See id.* at 370. In support of this conclusion, the court cited *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000), where this Court rejected a $325 per hour billing rate for attorneys with almost thirty years experience in civil rights litigation. *See id.*

[29] *See* Ex. C to the Goubeaud Aff. ("A grateful 'thank you' to Eisenberg & Schnell for providing office space to the Center.").

attorneys who handled this case.[30] The more appropriate rate for these very experienced and public-spirited attorneys is $300 per hour. This represents the high end of the range described by the court in *Tlacoapa*.[31]

In addition, the amount of hours charged by Bellman appears to be somewhat excessive. A court should reduce the lodestar amount by any amount of time deemed unreasonable, unnecessary or unrecoverable.[32] Rather than comb through detailed time sheets, a court can "exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours."[33] Numerous appellate courts have approved of the use of a percentage reduction to adjust fee awards for unsuccessful claims.[34]

---

30 I note, in passing, that this case did not raise any novel issues of fact or law.

31 *See* 386 F. Supp. 2d at 370 ("Instead, the range of fees in this District for seasoned civil rights litigators in small firms is between $200/hr and $300/hr.").

32 *See Quarantino*, 166 F.3d at 425.

33 *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997). *See also Hensley*, 461 U.S. at 436-37 (" The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (percentage reductions permissible "'as a practical means of trimming fat from a fee application'") (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

34 *See, e.g., Harris v. Marhoefer,* 24 F.3d 16, 18-19 (9th Cir. 1994) (approving district court's fifty percent reduction to the lodestar based on the partial success

I will therefore apply a ten-percent across-the-board reduction to Bellman's hours. Accordingly, Bellman's hours are reduced from 104.15 to 93.735 which, at a rate of $300 per hour, results in a fee award of $28,120.50. Gurian's fees, calculated at 16.25 hours at $300 per hour, total $4,875.00. Finally, all of plaintiffs costs, amounting to $1,390.75, will be awarded.[35]

## III. CONCLUSION

Plaintiffs are awarded $32,995.50 in attorney's fees and $1,390.75 in costs. These amounts shall be paid directly to the Anti-Discrimination Center of Metro New York, Inc. The Clerk of the Court is directed to close plaintiffs' motion for attorney's fees and costs [Document # 10] and this case.

---

of the prevailing party, a comparison of relief requested versus relief obtained, and the number of successful claims versus unsuccessful claims); *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (affirming district court's twenty percent reduction of award to account for plaintiff's limited success); *Zook v. Brown*, 865 F.2d 887, 895-96 (7th Cir. 1989) (approving a seventy-five percent reduction to account for plaintiff's limited success); *Institutionalized Juveniles v. Secretary of Pub. Welfare*, 758 F.2d 897, 925 n.44 (3d Cir. 1985) (stating that a district court may "make a percentage reduction for lack of complete success").

[35] The requested costs consist of $350 in filing fees, service fees of $65, and deposition transcript costs of $975.75. These items are clearly compensable as costs. It is well-settled that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg*, 143 F.3d at 763 (quotation marks and citation omitted).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 26, 2007

**- Appearances -**

**For Plaintiffs:**

Richard F. Bellman, Esq.
Craig Gurian, Esq.
Anti-Discrimination Center of
Metro New York, Inc.
377 Broadway, 9th Floor
New York, New York 10013
(212) 346-7600

**For Defendants:**

Joseph G. Goubeaud, Jr., Esq.
Scancarelli, Jacobson & Uzzo, LLP
22 West First Street
Mount Vernon, New York 10550
(914) 699-0600